# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

## APPEAL NO. 22-1814

---

## JANE DOE,

Plaintiff/Appellee

vs.

## THE BOARD OF TRUSTEES OF THE NEBRASKA STATE COLLEGE SYSTEM,

Defendant/Appellant

---

APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

TRIAL COURT JUDGE: HON. JOSEPH F. BATAILLON
DISTRICT COURT DOCKET NO. 8:17-CV-265-JFB-CRZ

---

## PETITION FOR REHEARING AND REHEARING EN BANC

---

Maren Lynn Chaloupka
Chaloupka Law LLC
1906 Broadway
Post Office Box 1724
Scottsbluff, NE 69363-1724
(308) 270-5091

ATTORNEY FOR APPELLEE

## S<small>UMMARY OF THE</small> A<small>RGUMENT</small>

On August 15, 2023, the majority of a three-judge panel of this Court reversed the district court's denial of Defendants' post-verdict Rule 59 motion for new trial; Judge Kelly dissented. The majority reweighed and re-evaluated the evidence relied upon by the jury without identifying the "miscarriage of justice" that is required to support substituting its judgment for the jury's. In so doing, the panel majority:

1. Implicitly concludes that the jury found testimony of Defendant's witnesses credible when those witnesses testified that their actions were not unreasonable under the known circumstances, when the verdict inexorably shows that the jury did not find Defendants' explanations credible; and

2. Changing the holding of *Shank v. Carleton College* to require post-notice harassment in order for a plaintiff to have suffered a cognizable harm.

Pursuant to **F<small>ED</small>. R. A<small>PP</small>. P. 35**, DOE advises that the panel majority's opinion creates a Circuit split by implication.

1

# TABLE OF CONTENTS

Summary of the Argument.................................................................1

Table of Authorities ......................................................................3

Background ....................................................................................5

**ARGUMENT**..................................................................................7

   A.  Review for abuse of discretion of a Rule 59 order does not permit reweighing evidence considered by the jury (nor does review of a Rule 50 order)..................................................................................9

   B.  The panel majority altered the key holding of **_Shank v. Carleton College_**. ..12

   C.  While counselor Robin Bila was not an "appropriate person" for purposes of notice of the first assault, notice to her was nonetheless relevant and important under NSCS' policy........................................17

CONCLUSION ...............................................................................19

CERTIFICATE OF SERVICE.........................................................20

CERTIFICATE OF COMPLIANCE..................................................21

Appellate Case: 22-1814    Page: 3    Date Filed: 08/29/2023 Entry ID: 5311177

UNITED STATES SUPREME COURT

*Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212 (1947) ............................7

*Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999) ................................ 13-17

*Messerschmidt v. Millender*, 565 U.S. 535 (2012) ...................................................10

*Tennant v. Peoria and Pekin Union Ry.*, 321 U.S. 29 (1944) ...........................6, 10

UNITED STATES CIRCUIT COURTS OF APPEALS

*Bonner v. Perry*, 564 F.3d 424 (6th Cir. 2009) .........................................................14

*Campos v. City of Blue Springs, Mo.*, 289 F.3d 546 (8th Cir. 2002) ......................8

*Doe v. Board of Trustees*, 2023 U.S. App. LEXIS 21166 (8th Cir. 2023) .........*passim*

*Doe v. Fairfax County Sch. Bd.*, 1 F.4th 257 (4th Cir. 2021) ...................................16

*Doe v. Fairfax Cty. Sch. Dist.*, 10 F.4th 406 (4th Cir. 2021) .............................. 16-17

*Farmer v. Kan. State Univ.*, 918 F.3d 1094 (10th Cir. 2019) ................................15

*Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165 (1st Cir. 2007), *reversed and remanded on other grounds* 555 U.S. 246 (2009)) ......................................................15

*Fireman's Fund Co. v. Aalco Wrecking Co., Inc.*, 466 F.2d 179 (8th Cir. 1972) .................................................................................................................6

*Harris v. Secretary, U.S. Dep't of the Army*, 119 F.3d 1313 (8th Cir. 1997) .........................................................................................................................10

*Keenan v. Comput. Assocs. Int'l, Inc.*, 13 F.3d 1266 (8th Cir. 1994) ..............10, 12

*Kollaritsch v. Mich. State. Univ. Bd of Trustees*, 944 F.3d 614 (6th Cir. 2019) .........................................................................................................................17

3

***In Re: Board of Trustees of the Neb. St. Colleges***, Case No. 21-2903
(8th Cir. 2021)........................................................................................7

***McDonough v. Anoka Cty.***, 799 F.3d 931 (8th Cir. 2015) ......................................14

***Nimely v. City of New York***, 414 F.3d 381 (2d Cir. 2005) ......................................9

***Ostrander v. Duggan***, 341 F.3d 745 (8th Cir. 2003) .................................................14

***Ratliff v. Schiber Truck Co.***, 150 F.3d 949 (8th Cir. 1998) ......................................6

***Shank v. Carleton College***, 993 F.3d 567 (8th Cir. 2021) ...................................*passim*

***United States v. Mathis-Gardner***, 783 F.3d 1286 (D.C. Cir. 2015) ........................9

***Weitz Co. v. MH Wash.***, 631 F.3d 510 (8th Cir. 2011) ...........................................9

***Williams v. Bd. of Regents***, 477 F.3d 1282 (11th Cir. 2007) ...................................15

***Zoll v. Eastern Allamakee Comm. Sch. Dist.***, 588 F.2d 246 (8th Cir. 1978) ..........10

UNITED STATES DISTRICT COURTS
***Thomas v. Walmart Stores, Inc.***, 2006 U.S. Dist. LEXIS 78215 (D. Neb. 2006) .......................................................................................................9

4

## Background

Nebraska is a conservative state. Its jury verdicts reflect Nebraska modesty and conservatism. Nebraska is not California – it is not a place where plaintiffs win "jackpot" verdicts. Difficult cases such as this one go to trial because it is generally safe for defense counsel to refuse to settle, expecting instead that a conservative jury will return a defense verdict.

But here, a conservative Nebraska jury heard eight days' worth of evidence, and found in favor of DOE. That jury heard all the evidence cited by the panel majority, but gave that evidence little weight. Instead, that conservative jury gave greater weight to the evidence, and reasonable inferences drawn from the evidence, cited by the dissent. The jury concluded that:

- the College's actions were not reasonably calculated to end the harassment DOE suffered;

- the College's actions were clearly unreasonable in light of the sexual assaults DOE suffered on the College's campus; and

- the College's actions were so severe, pervasive, and objectively offensive to deprive her of access to the educational opportunities or benefits provided by the defendants.

This conservative jury assessed damages at $300,000.00, well below DOE's request of $500,000.00: it was not a "jackpot" verdict.

5

It was not the province of the panel majority to reweigh or evaluate the evidence. The panel majority's error is apparent from what is absent from its opinion: nowhere does the panel majority address the facts and reasonable inferences from the facts that the dissent cites. Without doing so, the panel majority cannot claim that a reasonable jury could not find in DOE's favor as a matter of law.

Courts cannot reweigh the evidence and set aside a jury verdict because the court feels that other results are more reasonable.[1] This Court has held that "where reasonable men can differ in evaluating credible evidence, a new trial on the ground of the weight of the evidence should not be granted."[2] But with no explanation or even allegation of how these Nebraska jurors were unreasonable, this Court simply read the transcript and substituted its judgment – which is both dangerous precedent and unfair to DOE.

Neither the panel majority nor even NSCS has suggested that misconduct by anyone led to the jury verdict. NSCS has not pointed to anything the undersigned or the District Court said at any phase of the trial that allegedly "prejudiced" the

---

[1] *Ratliff v. Schiber Truck Co.*, 150 F.3d 949, 952 (8th Cir. 1998) (*citing* *Tennant v. Peoria and Pekin Union Ry.*, 321 U.S. 29, 35 (1944)).

[2] *Fireman's Fund Co. v. Aalco Wrecking Co., Inc.*, 466 F.2d 179, 187 (8th Cir. 1972).

Appellate Case: 22-1814    Page: 7    Date Filed: 08/29/2023 Entry ID: 5311177

jury.  Nor has NSCS disputed the admission of any evidence except some testimony of DOE's expert – but NSCS never argued that the admission of that evidence is a standalone reason for Rule 59 or Rule 50 relief.

NSCS pushed its interpretation of *Shank v. Carleton College* seven times before this appeal, including on a petition for a writ of mandamus, which this Court rejected.[3]  But in this appeal, NSCS convinced the panel majority to step into the role of a new trier of fact.  In that role, the majority "reject[ed] the appraisal of the evidence by the judge who saw and heard the witnesses and ha[d] the feel of the case which no appellate printed transcript can impart."[4]  It also rejected the appraisal of the evidence by the jurors who observed the same witnesses for eight days of trial; and in so doing, it disregarded Supreme Court authority and changed the holding of controlling authority of this Circuit.

## ARGUMENT

As a preliminary matter, the panel majority identified the scope of its review as *de novo* pursuant to Rule 50.[5]  While NSCS styled its post-trial motion "Renewed Motion for Judgment as a Matter of Law Or, Alternatively, New Trial[6]," its

---

[3] *In Re: Board of Trustees of the Neb. St. Colleges*, Case No. 21-2903.

[4] *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 216 (1947).

[5] *Doe v. Board of Trustees*, 2023 U.S. App. LEXIS 21166 at *8 (8th Cir. 2023).

[6] App. 1546, R. Doc. 270.

Appellate Case: 22-1814    Page: 8    Date Filed: 08/29/2023 Entry ID: 5311177

argument in substance was a complaint that the jury should have been instructed per NSCS' interpretation of **Shank**, "causal nexus" and "deliberate indifference."[7]

NSCS argued:

> Doe fell far short of proving deliberate indifference. The jury was only able to find in her favor because of the district court's defective jury instructions.[8]

Responsive to that, the District Court held:

> For the reasons stated on the record at instruction conferences and clarified in earlier orders, the Court finds the jury instructions properly stated the law on deliberate indifference and causation. *See* Filing No. 254. Accordingly, the Court finds the defendant's motion for judgment as a matter of law or for a new trial should be denied.[9]

The procedural context of NSCS' assigned error regarding this jury instruction is within its motion for new trial; and this Court reviews both jury instructions and the denial of motions for new trial only for abuse of discretion. The review of this appeal should thus follow Rule 59 analysis, not Rule 50[10]; but even under Rule 50, the panel majority erred in its *de facto* reversal of controlling Circuit authority and Supreme Court authority, and in its reweighing of properly-admitted evidence.

---

[7] App. 1557, R. Doc. 271.

[8] *Brief of Appellant* at 28.

[9] App. 3087, R. Doc. 295 at 4.

[10] *Campos v. City of Blue Springs, Mo.*, 289 F.3d 546, 551-52 (8th Cir. 2002).

8

**A.** <u>Review for abuse of discretion of a Rule 59 order does not permit reweighing evidence considered by the jury (nor does review of a Rule 50 order).</u>

"[A] movant should not use Rule 59 merely to relitigate previously-decided matters."[11] While the standard for ordering a new trial under Rule 59 is "somewhat less stern than that for entering judgment as a matter of law, [appellate] review of a district court's disposition of a Rule 59 motion is more deferential."[12]

This Court reviews a district court's disposition of a Rule 59 motion for abuse of discretion. Reviewing for abuse of discretion does not mean that an appellate court "substitutes [its] judgment for the trial court's," affirming only if it reaches the same conclusions after reviewing the record.[13] Even the panel majority acknowledged that it cannot set aside a jury verdict "unless there is a complete absence of probable facts to support the verdict."

New trial is appropriate only upon a "clear showing that the outcome is against the great weight of the evidence so as to constitute a miscarriage of justice."[14] Even if the proper approach is under Rule 50 rather than Rule 59, the panel majority could not reach its result without running afoul of Rule 50's

[11] *Thomas v. Walmart Stores, Inc.*, 2006 U.S. Dist. LEXIS 78215 (D. Neb. 2006).

[12] *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005).

[13] *United States v. Mathis-Gardner*, 783 F.3d 1286, 1288-89 (D.C. Cir. 2015).

[14] *Weitz Co. v. MH Wash.*, 631 F.3d 510, 520 (8th Cir. 2011).

Appellate Case: 22-1814    Page: 10    Date Filed: 08/29/2023 Entry ID: 5311177

standard. That is, that an appellate court may overturn a jury verdict only where "the evidence points all one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party."[15]

The United States Supreme Court has

> repeatedly and recently warned appellate courts, far removed from the scene, against ... reweighing the facts as they stood before the district court.[16]

This Court also prohibits reweighing, both on Rule 50[17] and Rule 59[18] review. The majority examined only NSCS's conduct that, only if reweighed by a different trier of fact, could be considered "not deliberately indifferent." The majority discounted the evidence extensively-quoted from the record in the dissent, and every reasonable inference, supporting a finding of deliberate indifference – a practice never before countenanced under Supreme Court precedent.

For example:

---

[15] *Zoll v. Eastern Allamakee Comm. Sch. Dist.*, 588 F.2d 246, 250 (8th Cir. 1978).

[16] *Messerschmidt v. Millender*, 565 U.S. 535 (2012). *See also Tennant v. Peoria & P.U. Ry. Co., supra*, 321 U.S. 29 (it is the jury's function to weigh contradictory evidence and inferences, judge the credibility of witnesses, receive expert instructions, and draw ultimate conclusion as to the facts).

[17] *Keenan v. Comput. Assocs. Int'l, Inc.*, 13 F.3d 1266, 1268 (8th Cir. 1994).

[18] *Harris v. Secretary, U.S. Dep't of the Army*, 119 F.3d 1313, 1318 (8th Cir. 1997).

Appellate Case: 22-1814    Page: 11    Date Filed: 08/29/2023 Entry ID: 5311177

- From the start, Chadron State College Vice-President Jon Hansen agreed that risk assessment and mitigation is a key part of Title IX compliance.[19] No one at the College ever performed a risk assessment of whether the rapist would rape DOE a third time if DOE gave him the opportunity, or would rape other women. The dissent recognized this as evidence of deliberate indifference[20]; the majority ignored it.

- The dissent's description of the College's sanctions for the rapist as "loosely monitored, and several were not tailored to the type of misconduct—sexual assaults—involved"[21] reflected the paralyzing fears DOE expressed in her testimony, which led DOE to terminate her counseling relationship of over a year, miss attending class in person and eliminate her participation in campus activities, the gym, the Student Center and such (as Hansen knew).[22] Without explanation, the majority simply reinterpreted the jury's and the dissent's findings about the sanction as "prompt, extensive, substantive, directed to protect and assist Doe, and not clearly unreasonable given the circumstances known to Chadron."[23]

- The panel majority never considered the impact on DOE of losing her counseling relationship. The dissent observed that "[o]nce Doe learned that Ige had been directed to receive counseling at the same place, she felt 'compromised' knowing that she could run into Ige in the 'small basement where [students] all pass each other.' At this point, Doe 'didn't even want to live,' but she decided to stop receiving counseling at the center even though she felt she still 'needed counseling more than anything.' The College did not offer her an option of counseling at another location."[24]

---

[19] App. 2590, 997:20; R. Doc. 284 at 71; *see also* App. 0862.

[20] ***Doe v. Board of Trustees***, 2023 U.S. App. LEXIS 21166 at *15.

[21] ***Id.*** at *15.

[22] ***Id.*** at *17.

[23] ***Id.*** at *10.

[24] ***Id.*** at *16.

Appellate Case: 22-1814     Page: 12     Date Filed: 08/29/2023 Entry ID: 5311177

- DOE had not asked to take the 2016 version of "online classes"; she only asked about options. The dissent observed that DOE "wanted to keep going to class in person."[25] When DOE voiced her concerns to Hansen, Hansen took over two weeks to respond, and the Title IX Coordinator did not respond to her calls. The panel majority did not address these undisputed facts.

These are some examples of reweighing (or ignoring altogether) by the majority of the evidence heard by this jury. That the evidence "may be susceptible of more than one reasonable interpretation" does not justify disrupting the jury's verdict.[26] But the majority cherry-picked evidence favorable to NSCS, credited it and substituted its own inferences.

The result is a dangerous new standard of review that throws uncertainty into the finality of verdicts, rendering any jury verdict unpredictably advisory.

B.     The panel majority altered the key holding of *Shank v. Carleton College*.

To support its decision, the majority wrote that "once the second assault took place—and the proper administrators were notified— there were no more incidents of harassment or abuse."[27] Citing *Shank v. Carleton College*[28] for that proposition, the panel majority concluded that there must be actual harassment or

---

[25] *Id.* at *17.

[26] *Keenan v. Computer Assocs. Int'l, Inc., supra* at 1269 (8th Cir. 1994).

[27] *Doe v. Board of Trustees, supra*, 2023 U.S. App. LEXIS 21166 at *10.

[28] *Shank v. Carleton College*, 993 F.3d 567 (8th Cir. 2021).

Appellate Case: 22-1814     Page: 13     Date Filed: 08/29/2023 Entry ID: 5311177

abuse post-dating notification of administrators of a sexual assault, or else there simply is no cognizable harm per **Shank**. In other words, as long as a Title IX funding recipient does *anything* in response to notification of a sexual assault, it matters not whether that *anything* is inadequate to restore the victim to equal access to educational opportunities or benefits.

That is not **Shank**'s holding; nor is it consistent with the United States Supreme Court's decision in **Davis v. Monroe Cty. Bd. of Educ.**[29], which the panel majority did not even mention. In **Davis**, the Supreme Court wrote that

> [i]f a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference "subjects" its students to harassment. That is, the deliberate indifference must, at a minimum, "cause [students] to undergo" harassment _or "make them_ _liable or vulnerable" to it_. Random House Dictionary of the English Language 1415 (1966) (defining "subject" as "to cause to undergo the action of something specified; expose" or "to make liable or vulnerable; lay open; expose"); Webster's Third New International Dictionary of the English Language 2275 (1961) (defining "subject" as "to cause to undergo or submit to: make submit to a particular action or effect: EXPOSE").[30]

The panel majority's analysis completely failed to regard the Supreme Court's inclusion of "make them vulnerable to [harassment]." And yet, this Court

---

[29] **Davis v. Monroe Cty. Bd. Of Educ.**, 526 U.S. 629 (1999).

[30] **Id.** at 645 (emphasis added).

13

approved that language in **Shank**, which the majority cited as support for requiring actual post-notification harassment.

In **Shank**, a unanimous panel of this Court held:

> An institution is deliberately indifferent when its "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Critically, the institution's deliberate indifference must "cause[] students to undergo harassment" or "ma[ke] them liable or vulnerable to it." This requires a Title IX plaintiff to demonstrate a "causal nexus" between the college's conduct and the student's experience of sexual harassment or assault.[31]

But the panel majority ignored, and/or implicitly overruled, this part of **Shank**, and all of the Supreme Court's decision in **Davis**.

DOE's case was based on the "make them liable or vulnerable to [harassment]" language of **Shank** and **Davis**. Repeatedly, NSCS urged the District Court to pretend that language (and **Davis**) just didn't exist. The panel majority accepted NSCS' urging. It ignored the Supreme Court's holding in **Davis**, and in so doing implicitly overruled this Court's key holding in **Shank**.[32]

---

[31] **Shank**, 993 F.3d at 573 (*citing* **Davis**, 526 at 645). **See also Ostrander v. Duggan**, 341 F.3d 745, 750 (8th Cir. 2003) (also stating that the institution's deliberate indifference must "directly cause the abuse to occur or make students vulnerable to such abuse").

[32] **See McDonough v. Anoka Cty.**, 799 F.3d 931, 941 (8th Cir. 2015); and **Bonner v. Perry**, 564 F.3d 424, 430 (6th Cir. 2009) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires

The implicit overruling of *Shank* by the panel majority foretells a Circuit split, for which this Circuit is now officially in the minority. In *Farmer v. Kan. State Univ.*[33], cited by the dissent herein, the Tenth Circuit held that the plain language of *Davis* "clearly indicates that Plaintiffs can state a viable Title IX claim by alleging alternatively either that [a school's] deliberate indifference to their reports of rape caused Plaintiffs to undergo harassment or made them liable or vulnerable to it." Consistent with that, the First Circuit has held that a single instance of pre-notice, student-on-student harassment could "form a basis for Title IX liability if that incident were vile enough and the institution's response, after learning of it, unreasonable enough to have the combined systemic effect of denying access to a scholastic program or activity."[34] The Eleventh Circuit also approved the "or made them liable or vulnerable to" language in *Williams v. Bd. of Regents*[35].

---

modification of the decision or this Court sitting *en banc* overrules the prior decision.").

[33] *Farmer v. Kan. State Univ.*, 918 F.3d 1094, 1103 (10th Cir. 2019).

[34] *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172 (1st Cir. 2007), *reversed and remanded on other grounds* 555 U.S. 246 (2009).

[35] *Williams v. Bd. of Regents*, 477 F.3d 1282, 1295-97 (11th Cir. 2007).

15

The Fourth Circuit has also approved this language.  In ***Doe v. Fairfax County Sch. Bd.***[36], that Circuit wrote:

> Even a single incident of sexual harassment, if sufficiently severe, can inflict serious lasting harms on the victim—physical, psychological, emotional, and social. And where such harms deprive the victim of the ability to fully participate in or to benefit from the educational opportunities provided by their school, and where this deprivation remains unremedied or is compounded as a result of the school's deliberate indifference, the victim surely is "denied access to educational benefits and opportunities on the basis of gender" - which Title IX clearly prohibits.  In such situations, the school's inadequate response to the alleged sexual harassment leaves the victim more vulnerable to further harassment.

When the ***Fairfax County*** school petitioned for rehearing *en banc*, the Fourth Circuit denied its petition.  In his concurrence of the denial, one jurist wrote:

> [T]he Supreme Court has explained that an educational institution can be held liable under Title IX not only where its deliberate indifference "cause[s] [students] to undergo harassment," *but also where such indifference "make[s] them liable or vulnerable" to harassment.* ***Davis***, 526 U.S. at 645. This was no idle language. Nor was it pulled from thin air.  ***Davis*** explicitly grounded this interpretation in the statutory text.
>
> The statute refers to students who are "*subjected* to discrimination." 20 U.S.C. 1681(a).  ***Davis*** noted that one dictionary definition of "subject" was "to make liable or vulnerable; lay open; expose." ***Davis***, 526 U.S. at 645. And common sense tells us that a student can be made vulnerable to further harassment after an initial incident without actually *undergoing* additional harassment. ***See, e.g., Vulnerable***, Merriam-Webster.com, https://www.merriam-

---

[36] ***Doe v. Fairfax County Sch. Bd.***, 1 F.4th 257, 274 (4th Cir. 2021).

Appellate Case: 22-1814     Page: 17     Date Filed: 08/29/2023 Entry ID: 5311177

webster.com/dictionary/vulnerable (defining "vulnerable" in part as "*capable* of being physically or emotionally wounded").

> Thus, the statute itself makes plain that a school may be held liable when it makes a student vulnerable to sexual harassment by their peers, such as by failing to respond appropriately after learning of an initial incident of sexual assault. [S]chools do not get "one free rape." To hold otherwise would be "inconsistent with Title IX's goals, misinterpret[] *Davis*, and lead[] to the absurd result of requiring students to be sexually harassed or assaulted at least *twice* before a school can be held liable in damages for its deliberate indifference to known harassment," an outcome that "cannot be squared with Title IX's text and goal." *Id.*[37]

Without acknowledging *Davis* or *Shank*'s reliance on the *Davis* holding in its analysis, the panel majority has overruled not only that part of *Shank* but also *Davis*. With no conflicting authority from the Supreme Court on the continuing validity of "or made them liable or vulnerable to," its ruling creates confusion, and deviates from the majority of Circuits that have examined this question.[38]

C.  <u>While counselor Robin Bila was not an "appropriate person" for purposes of notice of the first assault, notice to her was nonetheless relevant and important under NSCS' policy.</u>

---

[37] *Doe v. Fairfax Cty. Sch. Dist.*, 10 F.4th 406, 411 (4th Cir. 2021) (concurrence) (cleaned up).

[38] This Circuit has now joined the outlier Sixth Circuit, and only the Sixth Circuit, on this issue. *See Kollaritsch v. Mich. State. Univ. Bd of Trustees*, 944 F.3d 614 (6th Cir. 2019).

Appellate Case: 22-1814     Page: 18     Date Filed: 08/29/2023 Entry ID: 5311177

Robin Bila, to whom DOE reported Ige's sexual assault in May 2016, was not an "appropriate person" under Title IX decisional authority. But NSCS' Policy 3020 includes this requirement:

> *Exception Regarding Employee Reporting*: The law recognizes and protects the confidentiality of communications between a person seeking care and a medical or mental health professional. Medical or mental health professionals employed by the Colleges (Licensed Student Counselors and Nurses) respect and protect confidential communications from students, faculty, and staff to the extent they are legally able to do so. Employees may have to breach a confidence, however, when they perceive an immediate and serious threat to any person or property.[39]

When Bila received DOE's report in May 2016 that a student had raped her, Bila never even considered whether the rapist presented "an immediate and serious threat to [DOE]" if the rape went unreported.

Asked whether she "walked through whether there was a risk of a second assault with [DOE]," or whether she consulted with higher-credentialed colleagues on a risk assessment (given that DOE still worked overnights in the dormitories and the rapist was still there), Bila acknowledged that she never did.[40] Bila knew that part of risk assessment was identifying whether the rapist was or wasn't still

---

[39] App. 1170.

[40] App. 1816, 223:02-23, R. Doc. 280 at 165.

there, but she did not perform any risk assessment to determine whether this part of Board Policy 3020 required her to report DOE's first assault.[41]

This was an example of NSCS' failure to implement risk assessment process or risk assessment training.[42]  This jury heard evidence that NSCS' failure to implement risk training was on multiple levels – from administrators down to counselors like Bila.  The jury was reasonable to infer that Bila's failure to assess whether DOE's report of the first rape triggered the "*Exception Regarding Employee Reporting*" in Board Policy 3020, before unilaterally deciding that she would not report it, was evidence of NSCS' deliberate indifference in implementing and training for its own policy.

<u>CONCLUSION</u>

For these reasons, this Court should GRANT the Petition for Rehearing and Petition for Rehearing *En Banc*; vacate the majority opinion; and reinstate the judgment of the district court.

---

[41] App. 1817, 224:01, R. Doc. 280 at 166.

[42] App. 1895, 302:10, R. Doc. 281 at 75.

JANE DOE, Appellee,


By:    /s/ Maren Lynn Chaloupka
       Maren Lynn Chaloupka – NSBA # 20864
Chaloupka Law LLC
1906 Broadway
Post Office Box 1724
Scottsbluff, NE  69363-1724
(308) 270-5091
mlc@chaloupkalaw.net


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was sent via CM/ECF on this 29th day of August 2023, to the following:

George E. Martin, III
Michael J. Roccaforte
Leigh Campbell Joyce
Baird Holm, LLP
1700 Farnam Street, Suite 1500
Omaha, NE  68102
gmartin@bairdholm.com
mroccaforte@bairdholm.com
lcampbell@bairdholm.com

Alexandra Z. Brodsky
Adele P. Kimmel
Mollie Berkowitz
Public Justice
1620 L Street NW, Suite 630
Washington, DC  20036
abrodsky@publicjustice.net
akimmel@publicjustice.net
mberkowitz@publicjustice.net


       /s/ Maren Lynn Chaloupka

20

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This document complies with the type-volume limit of Fed. R. App. P. 35(b) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   ☐    this document contains 3658 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   ☐    this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

   _/s/ Maren Lynn Chaloupka_

Appellate Case: 22-1814    Page: 22    Date Filed: 08/29/2023 Entry ID: 5311177